**In re INTERBOROUGH CONSOL. CORP.**

No. 26690.

United States District Court
S. D. New York.

July 29, 1952.

Bernard Cowen, New York City, for petitioners.

Olin, Murphy & Redmond, New York City, for Empire Trust Co., by Gordon Murphy, New York City.

Nathaniel L. Goldstein, Atty. Gen., of New York, for State of New York, by Murray Sylvester and Noel Rubinton, Asst. Attys. Gen.

McGOHEY, District Judge.

This is a proceeding brought on by petitions of certain holders of the bankrupt's indenture bonds. They pray that Empire Trust Company, hereafter called Empire, be directed to pay into the bankruptcy court for distribution among petitioners the sum of $30,758.37 which Empire received from the trustee in bankruptcy in 1922–24[1] for payment to bondholders and which concededly was not so paid because of failure of the holders to present their bonds to Em-

1. The matter was then in charge of Judge Julius Mayer.

pire as directed in the order pursuant to which it received the funds.[2]

Bankruptcy was adjudicated on March 28, 1919. The trustee was discharged on April 11, 1927. On November 4, 1946, Empire, purporting to act under authority of § 300 of the New York Abandoned Property Law, McK.Consol.Laws, c. 1, turned over the funds in question to the Comptroller of the State of New York.

Empire appeared in opposition to the petitions and, by direction of the Court, the Comptroller of the State was given notice of the proceedings which were referred to Referee Stephenson as Special Master to take proof and report. The Attorney General of New York appeared for the Comptroller. Though the appearance was said to be "special," the Attorney General participated fully in all the proceedings before the Special Master. When his report came before the Court for confirmation, the Comptroller moved formally to intervene in the proceedings. The motion was granted, and he joins Empire in objecting to confirmation.

Upon Referee Stephenson's direction amended petitions were filed. There were answers thereto by Empire and a reply by at least one petitioner. The parties, including the Comptroller, then submitted a joint stipulation of facts and rested. After hearing argument and taking briefs the Special Master filed his opinion, findings and conclusions and directed that the matter be placed on the Bankruptcy Motion Calendar for hearing, which was done. He concluded that Empire should be ordered to pay the sum claimed, $30,758.37, in to the Court for pro rata distribution among the petitioners. He found $23,077.19[3] of the $30,758.37 to be unclaimed dividends and $7,681.18 to be unclaimed moneys, and concluded that both funds should have been paid into the Bankruptcy Court by Empire pursuant to § 66, sub. b, and § 66, sub. a, respectively, of the Bankruptcy Act, 11 U.S.C.A. § 106, subs. b, a. The lesser fund

consists of the undistributed balance of monies realized from the sale of securities which were pledged under the indenture as security for the bonds. The amount realized from this sale was not sufficient to pay the bonds in full, thus leaving the deficiency for which the claims were made against the general estate. The larger fund consists of the undistributed balance of dividends from the general estate.

With regard to the larger fund the Special Master rested his conclusions on a finding expressed in his opinion though not included in his formal findings of fact, that the claim which Empire as Indenture Trustee filed with the Trustee in Bankruptcy "on behalf of all bondholders" was not and could not have been allowed and that it came into possession of the funds only as disbursing agent of the Bankruptcy Trustee for distribution to the individual bondholders. This, of course, is disputed by Empire and New York's Comptroller. They contend that Empire's claim as Indenture Trustee was duly allowed and that, under the decision in In re Paramount Publix Corp.,[4] Empire, having received the fund as a creditor holding an allowed claim, was not after receipt of the fund subject to the supervision of the Bankruptcy Court as to its disposition.

With regard to the lesser fund, the Special Master decided that title to the collateral and its proceeds never passed to Empire and consequently the Bankruptcy Court never relinquished control over it. Empire and New York's Comptroller oppose this conclusion on the ground that this fund was never properly part of the general assets of the estate to be administered by the Court for general pro rata distribution.

After hearing argument by the parties when this matter appeared upon the Bankruptcy Motion Calendar and further argument at several conferences in chambers and upon consideration of the Special Master's opinion and findings and conclusions

2. They seek distribution of another fund of $1,216.75 previously paid into the U. S. Treasury by the Clerk of this Court. There is no dispute as to this fund.

3. The sum was actually $24,628.54, but $1,551.35 of it has been paid to creditors by the Comptroller.

4. 2 Cir., 72 F.2d 219.

and of the papers herein including memoranda and other material submitted by the parties at my request, it is my decision that both funds are subject to the control of this Court and that Empire is obligated to pay into Court the sum of $30,758.37 for distribution among petitioners.

■ *The $24,628.54 fund.* Payment could have been made to Empire as a creditor even though it had no bonds to present since its claim was based on the indenture, not on the bonds. § 57, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. b. Under the Paramount case (decided after the payments to Empire) if Empire had been paid as a creditor it could "hold or distribute" the fund "like any creditor who has received dividends, subject only to the obligations arising under its trust and the law of the state of New York, and without supervision by the bankruptcy court."[5] Therefore, if Empire had been paid as a creditor and if I were free to apply the doctrine of the Paramount case it would follow that petitioners would fail.

Was Empire paid as a creditor? The fact that Empire's proof of claim was consolidated with the proofs filed on behalf of the various bondholders (order dated December 1, 1922) and the further fact that the consolidated claim was allowed (order dated June 29, 1923) would seem to indicate that it was. On the other hand, the following facts indicate that it was not: (a) the order of December 1, 1922, directed that dividends payable on the consolidated claim "shall be paid and disbursed by said Trustee in Bankruptcy, through said Empire Trust Company as Trustee under said Trust Agreement * * * and as disbursing agent of said Trustee in Bankruptcy * * *;" (b) that order further provided:

"V. The Court reserves the right and retains jurisdiction to make such further orders and decrees as may be proper in respect of any funds so deposited with Empire Trust Company which shall not be disbursed to such bondholders within six months after the deposit thereof."

(c) the dividends were actually paid in the manner prescribed by that order.

The conclusion I reach from these somewhat ambiguous data is that the dividends were not paid to Empire as a creditor. It might be said that Empire's claim was recognized and allowed at least to the extent of the difference between the total amount of the consolidated claim and the total amount of the claims filed by individual bondholders. It seems to me, however, that the provisions of paragraph V of the order of December 1, 1922, negative that position.

Since Empire was not paid as a creditor, the fund less $1,551.35 which has been paid to creditors by the Comptroller was and is subject to the Court's control and petitioners must prevail.

The same result would follow even if I were to conclude that the Court paid Empire as a creditor. In that situation paragraph V of the order of December 1, 1922, establishes that the Court nevertheless asserted and exercised control of the fund. While it is true that the later teaching of the Paramount case indicates that it had no such right of control, I believe that I am not free to apply that case to overrule Judge Mayer's decision. If he was wrong in asserting such right of control, correction should come not from this Court but from the Court of Appeals.

■ *The $7,681.18 fund.* The proceeds of the sale of the collateral were turned over to Empire on July 10, 1923. Empire was empowered by the order of June 29, 1923, merely to pay out the authorized amounts upon presentation of the bonds. That was the extent of its control over the fund. The Court, by order of July 3, 1922, had "reserved for future hearings and determination by" itself "All questions relating to the distribution of the proceeds of said sale and * * * all questions as to the time and manner of distribution * * *." Thus it seems to me the Court clearly retained control over the undistributed portion of the proceeds of the sale of the collateral, namely the fund of $7,681.18. If this was wrong, as heretofore stated, I think correction must be made by the Court

5. 72 F.2d at page 223.

of Appeals. Consequently, I hold that the petitioners are entitled to share in this fund.

The Special Master's application for the allowance of $500 as the reasonable value of his services is granted. In accordance with his application said allowance will be paid to the Clerk of the Court for the Referees' Salary Fund.

Settle order in accordance with this opinion.